# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CALEB A. ROOT,<br><br>Defendant. | No. 23-CR-4041-LTS-KEM<br><br>**REPORT & RECOMMENDATION** |

_____

Defendant Caleb A. Root, proceeding pro se, filed a motion to suppress evidence seized during a traffic stop. Doc. 84. The Government resists. Doc. 94. As I have already gathered facts about the traffic stop in connection with a prior motion to suppress filed by Root's prior counsel (Doc. 41), I do not find a hearing necessary. I recommend denying the motion.

I previously set out the facts surrounding the traffic stop at issue:

> Around 3:30 a.m., Officer Smith initiated a traffic stop of a truck pulling a trailer (both with Montana plates) after the truck cut through a gas station parking lot (illegally using the parking lot as a thoroughfare). The trailer also had a taillight out. Officer Smith believed the truck had abruptly braked and cut through the parking lot to avoid driving by his marked squad car, which he found suspicious.
>
> Officer Smith walked over to the passenger side window and asked, "How we doing?" He asked whether the driver, ultimately identified as Root, was just moving to town, and Root responded that he was headed to Montana. Root confirmed that he was alone in the vehicle. Officer Smith asked what was going on and explained that he had pulled Root over for using the parking lot as a thoroughfare. Root apologized, explaining that he was trying to find his Airbnb. Officer Smith asked where the Airbnb was located, and Root read the address from his phone, located in Burbank, South Dakota. Officer Smith noted they were currently in Sioux City, Iowa, and Root said Burbank was 9 miles away. Officer Smith said

Burbank was a "long way away yet," and Root explained he had been at the strip club and had been driving around lost for two hours looking for the Airbnb (despite having directions on his phone). There are only two strip clubs in Sioux City, and they are both near the interstate; and to reach Burbank from Sioux City, the logical route is via the interstate. Root was in an area of town away from both the strip clubs and the interstate, far afield from the most likely path of someone traveling from the strip club to Burbank.

Officer Smith asked whether the truck belonged to Root, and he said it was his wife's truck, a company truck. Officer Smith asked whether he had a valid license, and Root said it was in his wife's name and gave his name as "John G—." Officer Smith asked again if he had a valid license. Root said it was somewhere in the truck and confirmed it was a Montana license. Officer Smith asked, "So you're going to the Airbnb?" Root confirmed he would sleep at the Airbnb and grab breakfast in the morning before heading home to Montana. Root provided the name of the business and denied staying in Iowa for work. At some point during their conversation, another officer arrived on the scene and stood near the driver's side window.

Officer Smith asked Root to spell his first and last name, and Root did so (for the John G. alias he had provided). Officer Smith then asked for his date of birth. Root said Officer Smith would have to look it up, indicating he had done nothing wrong and was scared. Officer Smith said he was just asking for Root's date of birth. Root said he needed to talk to his attorney because he had not done anything wrong. Officer Smith explained that because he had been pulled over for a traffic stop in Iowa, Root had to produce a driver's license or identify himself by name and date of birth. Root said he did not want to incriminate himself. Officer Smith asked how he would incriminate himself by providing his date of birth. They went back and forth, with Root refusing to provide his date of birth and Officer Smith continuing to ask, until Lieutenant Wagner arrived on the scene.

Lieutenant Wagner pulled his marked squad car in front of Root's truck. Thus, when Lieutenant Wagner arrived, there were two marked squad cars parked behind Root's truck, one squad car parked in front of his truck, and an officer outside both doors to the truck (the driver side and passenger side).

As Lieutenant Wagner approached, Officer Smith informed him that Root had been pulled over for using a parking lot as a thoroughfare and that he refused to provide his date of birth. Lieutenant Wagner asked Root why he would not tell law enforcement his date of birth. Root indicated he had

2

had a few drinks and had been told not to answer any questions. Lieutenant Wagner asked Root to step out of the vehicle. Lieutenant Wagner explained that if Root did not provide his date of birth, their only other option would be to take him to jail. Root then relented, identifying himself under his true name and date of birth. He admitted that he did not have a valid license, that he had spent a lot of time in federal prison, and that there was an active warrant for his arrest in Colorado. Lieutenant Wagner asked Root how much he had drunk that night, and Root said five to six beers. Root explained that he had provided his wife's ex-husband's name in an attempt to avoid trouble, since the truck and trailer would "come back" to that name. Lieutenant Wagner asked about Root's travel plans and trailer contents; Root said he had visited family and retrieved items from property he owned in Michigan, and he was transporting those items back to Montana, where he lived.

  Lieutenant Wagner looked through the truck's windows with his flashlight and asked if Root had marijuana sitting out on his floor. Root admitted he did. Lieutenant Wagner informed him that marijuana possession had not been legalized in Iowa. Root suggested that prison had taken his life away from him, and Lieutenant Wagner responded that he needed to blame his actions, not law enforcement, for his incarceration. Officer Smith began handcuffing Root, placing him under arrest. Lieutenant Wagner advised Root of his *Miranda* rights, and the officers conducted a search of Root's vehicle.

Doc. 44.

Root argues that law enforcement lacked reasonable suspicion or probable cause for the initial traffic stop. Sioux City Police Officer Brian Smith testified that he pulled Root over for cutting through a parking lot in an attempt to avoid law enforcement, in violation of Sioux City Municipal Ordinance 10.30.180, which prohibits "driv[ing] a vehicle across or upon a driveway, parking lot of similar type area whether such be public or private, in an attempt to use same as a thoroughfare." Officer Smith also testified that Root's trailer had a taillight out (although he did not mention this to Root as the basis for the stop). An officer's "subjective reason for making the [stop] need not be the criminal

offense as to which the known facts provide probable cause."[1] Probable cause supported the initial traffic stop.

Root also suggests that law enforcement unreasonably prolonged the traffic stop.

> "A police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." "Whether the duration of the stop is reasonable is determined by the seizure's 'mission,' and law enforcement must be 'reasonably diligent' in carrying out that mission." Once an officer finishes the tasks associated with a traffic stop, it is unreasonable to further detain the vehicle's occupants unless something occurs during the stop to generate reasonable suspicion to justify the further detention.[2]

Root suggests that law enforcement completed the mission of the initial traffic stop once he admitted his true name. But law enforcement had not yet written Root a ticket or warning. In any event, law enforcement had developed probable cause by that point for numerous other violations—driving without a valid license, driving without proof of insurance, and providing false information to law enforcement.

Root argues that he was "in custody" for purposes of *Miranda* warnings when Lieutenant Wagner arrived. The court previously rejected this argument. Docs. 44, 67.

Root suggests that Lieutenant Wagner illegally searched his vehicle when he shined a flashlight through Root's vehicle's window. Root argues this amounted to a trespassory search. Prior cases do not support this argument;

---

[1] ***Devenpeck v. Alford***, 543 U.S. 146, 153 (2004).

[2] ***United States v. Austin***, 104 F.4th 695, 699 (8th Cir. 2024) (cleaned up) (quoting ***Rodriguez v. United States***, 575 U.S. 348, 350 (2015); ***United States v. Magallon***, 984 F.3d 1263, 1278 (8th Cir. 2021)).

4

Lieutenant Wagner's actions did not amount to a "search" for purposes of the Fourth Amendment.[3]

Root argues that the search of his car was not a valid inventory search, because there is no evidence police followed standardized procedures. The Government responds the search was not an inventory search, but an investigatory search supported by probable cause.

> [T]he automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." A combination of otherwise innocent factors may create probable cause. Because "probable cause is a practical and common-sensical standard," "an officer may draw inferences based on his own experience" to determine whether probable cause exists.[4]

Here, the marijuana in plain view, combined with Root's providing a false name and questionable story about his presence in the area, provided officers probable cause to search Root's vehicle for further evidence of drugs.[5]

I recommend **denying** Root's motion to suppress. Doc. 84.

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59,

---

[3] *See United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016) (rejecting argument that "shining . . . flashlight to illuminate the interior of [defendant's] car" amounted to search for Fourth Amendment purposes (quoting *Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (plurality opinion))).

[4] *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (cleaned up) (quoting *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017)).

[5] *See United States v. Rowland*, 341 F.3d 774, 785 (8th Cir. 2003) (collecting cases holding that evidence of drug paraphernalia in plain view in a vehicle provides probable cause to search the entire car).

5

must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.[6] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[7] Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[8]

The Clerk of Court will mail a copy to Defendant, proceeding pro se.

**DATED** August 1, 2024.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[6] **LCrR 59**.

[7] *See* **Fed. R. Crim. P. 59**.

[8] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).